UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 7294 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| M.L. SULLIVAN INSURANCE AGENCY, INC., d/b/a | ) | |
| Sullivan & Associates Insurance and Risk Management, | ) | |
| SEBASTIAN MIKLOWICZ, and AMERICAN INTER- | ) | |
| FIDELITY CORP., as attorney-in-fact for AMERICAN | ) | |
| INTER-FIDELITY EXCHANGE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is an insurance coverage suit. In the underlying litigation, American Inter-Fidelity Corporation ("AIFC"), acting as attorney-in-fact for American Inter-Fidelity Exchange ("AIFE"), an insurance company, sued M.L. Sullivan Insurance Agency, Inc., an insurance broker, and its employee Sebastian Miklowicz for misrepresenting important data that AIFE used to calculate its premiums. *See Am. Inter-Fidelity Corp. v. M.L. Sullivan Ins. Agency, Inc.*, No. 15 C 4545 (N.D. Ill. filed Sept. 14, 2015) (Pallmeyer, J.) (operative complaint reproduced at Doc. 51-1). Sullivan and Miklowicz asked their insurer, Westport Insurance Corporation, to defend them, and in response Westport brought this diversity action seeking a declaratory judgment that it is not required to defend them or to reimburse them for any judgment they might incur in the underlying suit.

After the parties filed cross-motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), Docs. 30, 31, 33, certain procedural and jurisdictional detours ensued. Because Illinois law requires an insurer in a coverage suit to name the underlying plaintiff as a

1

defendant, *see Great W. Cas. Co. v. Mayorga*, 342 F.3d 816, 817 (7th Cir. 2003) ("Under Illinois law, the tort claimant is a necessary party to a suit to determine coverage."); *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 811 (Ill. 1977) (holding that the plaintiffs in the underlying tort suit were not bound by a default judgment against the insureds in the insurer's declaratory judgment action because the underlying plaintiffs were "necessary parties defendant" to the declaratory judgment action), the court ordered Westport to do just that. Doc. 43. Westport obliged by filing a second amended complaint that joined AIFC as a defendant "as Attorney in Fact for" AIFE. Doc. 44 at 1.

That complaint presented two jurisdictional problems, which the court described in an opinion. Doc. 59 (reported at 2016 WL 7569263 (N.D. Ill. Aug. 22, 2016)). The first concerned Miklowicz's citizenship: while the complaint alleged that Miklowicz is a "resid[ent]" of Illinois, Doc. 44 at ¶ 3, an individual's citizenship for diversity purposes "depends not on residence but on domicile." *RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d 689, 692 (7th Cir. 2016). Westport easily fixed this problem, alleging in a jurisdictional addendum that Miklowicz is a citizen of Illinois. Doc. 66.

The second jurisdictional problem concerned the addition as a defendant of AIFC as AIFE's representative. As the court explained, the complaint did not indicate whether AIFC (a corporation and indisputably an Indiana citizen) exercised the necessary amount of control over AIFE (an unincorporated association whose citizenship depends on the citizenship of its members, who had not been identified) to make AIFC rather than AIFE the jurisdictionally relevant party. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91-93 (2005); 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Jurisdiction* § 3606 (3d ed. 2016) ("In order to come within the rule that a bona fide representative's citizenship controls, the

representative must have actual powers with regard to the matter in litigation."). Given this, the court could not determine whether AIFC or AIFE was the proper defendant and thus whether there was complete diversity. In light of this problem, the court ordered the parties to show cause why the suit should not be dismissed for want of subject matter jurisdiction. Doc. 58.

In response, Westport sought leave to file a third amended complaint, which alleged that both AIFE and AIFC were Indiana corporations with their principal places of business in Indiana, thus obviating the need to determine which one was the jurisdictionally relevant party. Doc. 60. As the court noted days later, however, a search of the Indiana Secretary of State website revealed that the allegation as to AIFE was incorrect. Doc. 62. Westport then withdrew its motion for leave to amend; it acknowledged that AIFE was an Indiana "reciprocal or interinsurance exchange" (*not* a corporation), but demonstrated that AIFC was the jurisdictionally relevant party because, under the governing Indiana authorities, *see Wyson v. Auto. Underwriters, Inc.*, 184 N.E. 783, 786 (Ind. 1986); *Ind. Dept. of Revenue v. Am. Underwriters, Inc.*, 429 N.E.2d 306, 310 (Ind. App. 1981); Ind. Code 27-6-6-2, 27-6-7-1, it exercises complete and exclusive control over AIFE's business. Doc. 63. This makes AIFC the jurisdictionally relevant party. So the parties are completely diverse, as Westport is a citizen of Missouri and Kansas, Doc. 44 at ¶ 1, while Miklowicz and Sullivan are citizens of Illinois, *id*. at ¶ 2; Doc. 66, AIFC is a citizen of Indiana, Doc. 44 at ¶ 4, and AIFE's citizenship, which is unknown, does not matter.

With subject matter jurisdiction secure, the court turns to the parties' cross-motions for judgment on the pleadings. Westport's motion is granted, and Sullivan's and Miklowicz's motions are denied.

## Background

### A. The Underlying Suit

In the underlying suit, AIFE (the court will refer to AIFE rather than AIFC as that suit's plaintiff) alleges that Sullivan and Miklowicz provided false information to AIFE that resulted in its losing out on insurance premiums it was owed. Sullivan acquired insurance from AIFE on behalf of trucking and interstate transportation concerns that Sullivan represented. Doc. 51-1 at ¶¶ 16-17. Each insured provided Sullivan with information about its power units and miles driven, and AIFE used that information to calculate the premium it would charge. *Id.* at ¶¶ 19, 22-23. The insured paid the premium to Sullivan, and Sullivan would turn over the premium to AIFE, presumably minus a commission. *Id.* at ¶¶ 23, 25, 31. The trouble, according to AIFE, is that Sullivan misrepresented to AIFE the information that the insureds provided, leading AIFE to believe that a lower premium was owed. *Id.* at ¶ 24. So, Sullivan would collect the correct (and higher) premium from the insured, and then, based on the incorrect information it provided to AIFE, would remit to AIFE an amount lower than what was rightfully owed. *Id.* at ¶¶ 27-28, 31-32. AIFE brought the underlying suit "to recover premiums collected and wrongfully withheld" by Sullivan. *Id.* at ¶ 6.

AIFE's complaint has nine counts. *Id*. at ¶¶ 35-115. The complaint accuses Sullivan and Miklowicz of intentional wrongdoing, but it also charges Sullivan with negligent misrepresentation as well as negligent supervision of Miklowicz and its other employees. *Id*. at ¶¶ 71-86. The negligence claims allege that "Plaintiff AIFE suffered damages, specifically economic losses, for AIFE's quoting premium rates far less than would have been quoted based on the false information supplied by SULLIVAN," and request "compensatory damages suffered by Plaintiff AIFE," pre- and post-judgment interest, costs, and "all such further and other relief as the Court deems just and appropriate." *Id*. at ¶¶ 77, 86.

4

### B. The Westport Policy

At all relevant times, Westport insured Sullivan under a Professional Liability Insurance Policy. Doc. 1 at ¶ 7; Doc. 1-1 (the policy). The policy provides coverage for claims that "seek DAMAGES arising from a WRONGFUL ACT committed either by the INSURED, or by a person for whose WRONGFUL ACTS the INSURED is legally liable …." Doc. 1-1 at 8. The policy defines "wrongful acts" to include "any negligent act, error, or omission of an INSURED in rendering PROFESSIONAL SERVICES or OTHER RELATED SERVICES for others." *Id.* at 15. The policy excludes coverage for "[a]ny CLAIM for intentional acts, including but not limited to, acts of dishonesty, fraud, [and] criminal conduct …." *Id.* at 17. "Damages" are defined as "monetary amounts for which an INSURED is held legally liable," but do *not* include:

> … matters deemed uninsurable under the law pursuant to which this POLICY will be construed; the return of any fees, commissions, profit sharing, or other remuneration, or costs or expenses for PROFESSIONAL SERVICES or OTHER RELATED SERVICES rendered or to be rendered by the INSURED; … reimbursement or return of premiums or funds; or redress in any form other than monetary relief, including, but not limited to, any form of injunctive or other equitable relief, restitution, replevin, unjust enrichment, declaratory judgments, or an accounting.

*Id.* at 12.

## Discussion

The court reviews a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion. *See Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004). The court may consider "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). All facts are considered in the light most favorable to the non-movant. *See United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991).

This diversity suit is governed by Illinois law because it was filed in a district court located in Illinois and neither party argues choice of law. *See Ryerson Inc.*, *v. Fed. Ins. Co.*, 676 F.3d 610, 611 (7th Cir. 2012). The Seventh Circuit has summarized Illinois law governing the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted). A court "will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006).

"To determine whether an insurer has a duty to defend its insured, [the court] compare[s] the factual allegations of the underlying complaint … to the language of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (citations and internal quotation marks omitted); *see also Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1178 (7th Cir. 2013). An insurer may decline to defend an insured only where "it is clear from the face of the underlying complaint that the allegations set forth ... fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge*, 860 N.E.2d at 315; *see also Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008). Illinois courts "give little weight to the

6

legal label that characterizes the underlying allegations. Instead, [they] determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010).

I.  **Westport's Duty to Defend Sullivan**

Sullivan is covered under the Westport policy if: (1) AIFE's complaint alleges that Sullivan committed a "wrongful act"; and (2) "the recovery sought falls within the policy's definition of damages." *Ill. State Bar Ass'n Mut. Ins. Co. v. Frank M. Greenfield & Assocs., P.C.*, 980 N.E.2d 1120, 1130 (Ill. App. 2012); *see also Cont'l Cas. Co. v. Law Offices of Melvin James Kaplan*, 801 N.E.2d 992, 996 (Ill. App. 2003). AIFE's complaint meets the first condition but not the second.

As noted, the policy covers claims for "wrongful acts," a term defined to include "any negligent act, error, or omission." Doc. 1-1 at 15. Sullivan argues that AIFE's negligent misrepresentation claim does precisely that: the claim alleges that Sullivan's misreporting the insureds' information to AIFE was a negligent act. Doc. 30 at ¶¶ 10-12. Westport responds that AIFE's complaint, when read as a whole, claims that Sullivan intentionally engaged in a scheme to defraud AIFE; it follows, Westport argues, that the complaint cannot be fairly read to allege negligent acts, and in fact alleges the intentional and fraudulent misconduct that the policy excludes from coverage. Doc. 32 at 7.

Sullivan has the better argument. The complaint alleges that Sullivan "acted carelessly in ascertaining the truth of the statements" it made to AIFE, Doc. 51-1 at ¶ 74; that Sullivan's "failure to employ reasonable protections and oversight of its employees and agents … led to [Sullivan] making false statements," *id.* at ¶ 81; and that "in the exercise of due diligence

7

[Sullivan] should have known, that it was not entitled to retain the excess funds," *id.* at ¶ 83. Although the complaint *also* alleges intentional acts of fraud, *e.g.*, *id.* at ¶¶ 18, 32, 36, and although if Sullivan intentionally provided AIFE with false information it cannot also have provided that information negligently, the Federal Rules permit inconsistent pleading. *See* Fed. R. Civ. P. 8(d)(2), (3). As a result, "the alleged conduct," acting carelessly in ascertaining the truth of the information provided to AIFE, "arguably falls within at least one of the categories of wrongdoing listed in the policy"—namely, any negligent act, error, or omission. *Santa's Best Craft*, 611 F.3d at 346. It therefore is not "clear and free from doubt that the policy's exclusion [for intentional acts] prevents coverage." *Pekin Ins. Co. v. Equilon Enters. LLC*, 980 N.E.2d 1139, 1143 (Ill. App. 2012) (internal quotation marks omitted).

Although AIFE's suit alleges a "wrongful act," it does not seek recovery within the policy's definition of damages. The Westport policy defines covered damages to *exclude*, among other things, "reimbursement or return of premiums," "restitution" payments, and "matters deemed uninsurable under the law pursuant to which this [policy] will be construed." Doc. 1-1 at 12. The first such exclusion on its face bars coverage for damages consisting of the premium payments that Sullivan is alleged to have wrongly withheld from AIFE. The second and third exclusions bar those damages as well. *See Ryerson Inc.*, 676 F.3d at 613 (noting that "a claim for restitution is a claim that the defendant has something that belongs of right not to him but to the plaintiff," whether that "something" was acquired through a deliberate act or "merely … an innocent mistake"); *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910-11 (7th Cir. 2001) (holding that "[a]n insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than 'stolen' is used to characterize the claim for the property's return," reasoning that such relief "is

8

restitutionary in character" because "it seeks to deprive the defendant of the net benefit of the unlawful act"); *Cont'l Cas. Co. v. Duckson*, 826 F. Supp. 2d 1086, 1097 (N.D. Ill. 2011) (holding that regardless of whether the policy uses the term "'damages' rather than 'loss,' … *Level 3* controls: the return of profits obtained illegally does not constitute covered damages under Illinois law"). Thus, the Westport policy precludes coverage for AIFE's claim for the allegedly withheld premium payments.

The question then becomes whether AIFE's negligence claims (recall that the policy excludes the fraud claims) seek something more than the allegedly withheld premium payments. Sullivan answers in the affirmative, arguing that "the AIFE Complaint expressly seeks compensatory damages for negligence in addition to equitable relief." Doc. 34 at 9; *see* Doc. 51-1 at ¶¶ 77, 86 (requesting "all compensatory damages suffered by Plaintiff AIFE"). Citing *Ryerson* for the proposition that an insurer has a duty to defend where the underlying plaintiff seeks a "*combination* of restitution and [covered] damages," 676 F.3d at 613, Sullivan asserts that AIFE's claim for compensatory damages "could include consequential damages such as lost profits, lost business, damage to good will and reputation, or loss of use of capital" above and beyond the withheld premiums. Doc. 34 at 10.

The trouble for Sullivan is that nothing in AIFE's complaint supports that assertion. To the contrary, the complaint plainly states that "AIFE brings this suit to recover premiums collected and wrongfully withheld by the Defendant SULLIVAN, alone or by and through its employees and agents." Doc. 51-1 at ¶ 6. And immediately preceding its reference to and request for "compensatory damages," the complaint defines the precise harm for which AIFE seeks compensation: "AIFE suffered damages, specifically economic losses, *for AIFE's quoting premium rates far less than would have been quoted* based on the false information supplied by

9

SULLIVAN." *Id.* at ¶¶ 77, 86 (emphasis added).  Nowhere does the complaint identify or even hint at any loss that AIFE suffered beyond the withheld premium payments.

Sullivan suggests that the underlying complaint's request for "all such further and other relief as the Court deems just and appropriate" provides the missing piece.  Doc. 40 at 7.  In support, Sullivan cites *Country Mutual Insurance Co. v. Bible Pork, Inc.*, 42 N.E.3d 958, 964 (Ill. App. 2015), which holds that a request for "other relief deemed appropriate" in an underlying complaint that explicitly references only equitable relief establishes that the suit was seeking damages as well.  But here, by contrast, the underlying complaint explicitly seeks damages; the only question is which kind, and that question is answered as set forth above.  Thus, AIFE's addition of the "all such further and other relief" boilerplate, in a complaint focused entirely on Sullivan's alleged act of wrongfully withholding premiums, cannot support the proposition that the complaint requests damages beyond the return of those premiums.  *Cf. Travelers Prop. Cas. Co. of Am. v. KFx Med. Corp.*, 637 F. App'x 989, 991 (9th Cir. 2016) (finding no duty to defend in part because the underlying complaint's "boilerplate request for 'other and further relief, at law or in equity' does not create a potential for damage liability where none of [the underlying plaintiff's] enumerated claims provide a basis for a damage recovery").  And because the underlying complaint does not seek covered damages under the Westport policy, Westport has no duty to defend Sullivan.

Finally, it bears mention that once AIFC (as AIFE's attorney-in-fact) was added as a defendant, the court invited it to file a brief setting forth its views on the cross-motions, which by that time had been fully briefed by the original parties.  Doc. 50.  AIFC had every incentive to assert that it was seeking compensatory damages other than the allegedly withheld premium payments; after all, if it obtains a judgment in the underlying suit, it has a better chance of

10

collecting that judgment if the Westport policy provides coverage. Yet AIFC's response made no such assertion, and in fact took no position at all on the cross-motions. Doc. 51 at 2 ("Beyond [AIFE] documenting that it has no intent to forego prosecution of any of its currently pending claims, it takes no position on the current motions for judgment on the pleadings."). This provides further confirmation, though none is necessary, that the only damages sought in the underlying suit consist of the allegedly withheld premiums.

## II. Westport's Duty to Defend Miklowicz

Miklowicz, who is covered under the policy as Sullivan's employee, Doc. 1-1 at 13, joins Sullivan's Rule 12(c) motion and asserts that "in the same way that Westport must defend Sullivan, it must defend and indemnify Miklowicz in relation to the AIFE lawsuit." Doc. 33 at 2. As shown above, Westport need not defend Sullivan. And because Miklowicz did not file a brief, any argument that pertains specifically to him is forfeited. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument ….").

## Conclusion

For the foregoing reasons, Westport has no duty to defend Sullivan or Miklowicz in the underlying suit. Because Westport has no duty to defend them, it necessarily has no duty to indemnify them. *See Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing*

*Ctr., Inc.*, 566 F.3d 689, 693 (7th Cir. 2009) ("Holding that an insurer has no duty to indemnify therefore follows inexorably from holding that an insurer has no duty to defend."); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993) ("In cases such as the instant case where no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise. Clearly, where there is no duty to defend, there will be no duty to indemnify and we find that the plaintiff-insurers have no duty to defend or indemnify the insureds in this case."). Judgment on the pleadings is granted to Westport and denied to Sullivan and Miklowicz. Having taken no position on the cross-motions, AIFC (as AIFE's attorney-in-fact) is bound by the judgment as well.

January 5, 2017

United States District Judge